**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

UNITED STATES OF AMERICA                                                                                PLAINTIFF

v.                                              NO. 4:14CR00143-04 JLH

ACE MAXIMILLIAN VARGAS                                                                              DEFENDANT

**OPINION AND ORDER**

Ace Vargas was indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The indictment charged three other defendants with conspiracy to possess with intent to distribute methamphetamine, distribution of methamphetamine, and other related charges. Ace Vargas has pled guilty to the one count of felon in possession and has come before the Court for sentencing. The presentence report provides for a base offense level of fourteen, citing U.S.S.G. § 2K2.1. With a two-level reduction for acceptance of responsibility, the presentence report proposes that the final offense level should be twelve. Based on an offense level of twelve and a criminal history category of I, the guideline imprisonment range would be ten months to sixteen months.

The United States has objected, arguing that the defendant should receive a two-level enhancement under § 3C1.1 for obstructing or impeding the administration of justice for his role in concealing evidence material to an investigation. The government also objects to the defendant not receiving a two-level enhancement under § 2K2.1(b)(1)(A) because three to seven firearms were involved in the offense. Finally, the government objects to the defendant not receiving a four-level enhancement under § 2K2.1(b)(6) because the firearms were possessed in connection with another felony, a conspiracy to possess with intent to distribute methamphetamine. If the government's objections are sustained, Ace Vargas's offense level would be twenty and the guideline range would

be thirty-three to forty-one months imprisonment.  The government has the burden of proving the facts relevant to these enhancements by a preponderance of the evidence.  *United States v. Villareal-Amarillas*, 562 F.3d 892, 895 (8th Cir. 2009).

The Court has conducted an evidentiary hearing on the government's objections.  Four witnesses testified at the evidentiary hearing: Chris Weaver, a narcotics investigator for the City of North Little Rock; Stephen Harris, who has pled guilty to conspiracy to possess with intent to distribute methamphetamine in the same indictment in which Ace Vargas is charged; Paula Spence, who has pled guilty to possession of methamphetamine with intent to distribute on charges in the same indictment as Ace Vargas; and Ace Vargas.  The Court also received several exhibits, two of which were video recordings.

The indictment in this case arises from what had been three separate investigations into methamphetamine distribution in central Arkansas.  Weaver was investigating Paula Spence.  Another officer of the narcotics division of the North Little Rock Police Department was investigating Stephen Harris.  Unbeknownst to the North Little Rock Police Department, the Pulaski County Sheriff's Department was investigating Manuel Vargas, who, according to testimony at the evidentiary hearing, supplied methamphetamine to both Spence and Harris.  Manuel Vargas and Ace Vargas are cousins.

The three investigations converged on August 26, 2013.  At that time, the North Little Rock Police Department had set up electronic surveillance on 12412 Woodbourne in Little Rock, which was known to them as the address of Paula Spence.  Spence lived there with Manuel Vargas, who was her boyfriend.  Manuel Vargas also had a residence at 4918 Westwood Avenue in Little Rock,

which he shared with his wife. The Pulaski County Sheriff's Department had the residence at 4918 Westwood under electronic surveillance.

On August 26, 2013, the electronic surveillance of 12412 Woodbourne video-recorded an incident in which Stephen Harris visited that address, remained there for approximately twenty-three minutes, and then exited with a black bag, which he placed in his car before driving away. The August 26 video recording is approximately one hour and eight minutes long. The first activity on the video shows Manuel Vargas drive up to the residence in a BMW, exit the car, and enter the residence. At approximately thirty minutes into the video, a white pick-up truck drove into the driveway, a man exited carrying a bag, and entered the residence. According to Paula Spence, that man was known to her as Jorge – Manuel Vargas's principal supplier of methamphetamine. Paula Spence believed that Jorge was to deliver five pounds of methamphetamine to Manuel Vargas that day, but the bag as shown in the video was not large enough to contain five pounds of methamphetamine. At approximately forty-five minutes into the recording, Stephen Harris drove up and parked in front of the residence, exited his vehicle, and entered the house. At approximately one hour and six minutes into the video, a white Dodge Charger parked in front of the residence. A man in a wheelchair – Ace Vargas – entered the picture carrying something – the recording is indistinct – on his lap. Another man – Nico Hobbs – came into the picture. Ace Vargas and Nico Hobbs entered the house. At approximately one hour and eight minutes into the video, Stephen Harris exited the house, got into his car, and left. The video recording ended at that point. Officers conducted a traffic stop of Harris and discovered a pound of methamphetamine in the bag. Harris told the police that he had purchased the pound of methamphetamine from Manuel Vargas. He also reported that two or three pounds of methamphetamine remained in the house.

Based upon Harris's statements, officers obtained a search warrant for 12412 Woodbourne, which they executed on the following day – August 27, 2013. During that search, officers found Paula Spence in the residence, pouring methamphetamine down a drain. A search of the house discovered several firearms, a large amount of cash, and three large bundles of marijuana. The officers also located two pounds of methamphetamine in a locked vehicle in the garage.

While the officers were executing the search warrant at 12412 Woodbourne, the surveillance camera at 4918 Westwood Avenue recorded a related incident. That recording shows that Manuel Vargas drove up in the same BMW he had driven the day before, entered the house, removed items from the house, put them in the back seat of the BMW, and went back into the house to retrieve additional items. Another vehicle – a white Dodge Charger – also was present. The evidence established that Nico Hobbs was driving the Charger, Ace Vargas was in the front passenger seat, and Ace Vargas's girlfriend was in the back seat. Approximately ten seconds after Manuel Vargas placed the items in the back seat of the BMW, Nico Hobbs exited the Charger, retrieved the items that Manuel Vargas had placed in the BMW, and placed them in the trunk of the Charger. Manuel Vargas then brought more items out of the house and put them into the trunk of the Charger. Then both vehicles left. Officers from the Pulaski County Sheriff's Department stopped both vehicles.

When the Charger was stopped, Ace Vargas was sitting in the passenger side of it with a bag at his feet. A firearm was located in that bag. Ace Vargas admitted that the firearm was his. Ace Vargas was shot in the back five times in a home invasion in California in 2003, as a result of which he is a paraplegic. He says that he carried the gun with him for self-defense out of fear that he might be the subject of another attack.

During the same traffic stop, officers discovered two pistols and an assault rifle in the trunk of the Charger, as well as a pistol under the driver's seat. In addition, $90,000 in cash and a large quantity of jewelry were found in the Charger's trunk. The guns, the cash, and the jewelry are items that Manuel Vargas retrieved from the house at 4918 Westwood while officers were executing the search warrant at 12412 Woodbourne.

The government contends that Ace Vargas was a participant in the methamphetamine distribution conspiracy of which Manuel Vargas was the leader, that Ace Vargas knowingly participated in attempting to hide evidence that had been located in Manuel Vargas's house at 4918 Westwood, and therefore his offense level should be enhanced pursuant to the guideline provisions mentioned above. Ace Vargas denies that he had any involvement in Manuel Vargas's distribution of methamphetamine and denies that he knowingly and intentionally participated in the concealment of evidence.

Both Stephen Harris and Paula Spence gave testimony that implicated Ace Vargas in Manuel Vargas's methamphetamine distribution business. Stephen Harris testified that he first met Ace and Manuel Vargas in 2000 or 2001 through a mutual friend who was sharing a house with them. Sometime thereafter, he began purchasing methamphetamine from them. Stephen Harris testified that he principally purchased methamphetamine from Manuel Vargas, but Manuel Vargas was incarcerated on several occasions, and when Manuel Vargas was incarcerated he would purchase methamphetamine from Ace Vargas. Stephen Harris testified, and Ace Vargas confirmed, that the two of them were friends. Stephen Harris called by telephone Ace Vargas after he had been shot and spoke with him. Stephen Harris also visited Ace Vargas in his California home while he was recuperating from his gunshot wounds, staying with him for one or two weeks. Stephen Harris

testified that Ace Vargas told him that the home invasion was drug related. Ace Vargas denies that the home invasion was drug related and denies telling Stephen Harris that it was. According to Stephen Harris, when he arrived at 12412 Woodbourne on August 26, 2013, Manuel Vargas said that the methamphetamine was not there yet and he would have to wait. Eventually, Ace Vargas and Nico Hobbs arrived. Ace Vargas, Stephen Harris says, had a shopping bag with a shoe box inside of it. Ace and Manuel Vargas went into another room, after which Manuel Vargas emerged with a box containing the methamphetamine.

Paula Spence testified that on some occasions Manuel Vargas was unable to obtain methamphetamine from Jorge. According to her, on three different occasions when that happened, she and Manuel Vargas flew to California and stayed at Ace Vargas's residence for some length of time. According to her, on all three occasions Manuel Vargas purchased large quantities of methamphetamine and marijuana. She testified that she, Manuel Vargas, Ace Vargas, and a man known to her as Turtle packaged the methamphetamine and marijuana for shipping in sealed bags, which were wrapped like birthday presents or placed in shoe boxes and then put into larger boxes for shipping. They took those packages to the postal service and shipped them back to Arkansas. Paula Spence also testified that Ace Vargas mailed one package that was intercepted by the postal service. Ace Vargas denies that he shipped or participated in shipping any drugs from California to Arkansas. Paula Spence also testified that Manuel Vargas told her that Ace Vargas directed Nico Hobbs to remove the evidence from the BMW on August 27, 2013, and place it in the Charger because the police would be looking for Manuel Vargas in his BMW.

Ace Vargas admits that he is the person on the two video recordings in the wheelchair. He testified that on August 26, 2013, he and Nico Hobbs went to Manuel Vargas's house at 12412

Woodbourne, smoked marijuana, and prepared to go to a recording studio where Nico Hobbs and Manuel Vargas were to perform rap music together. Ace Vargas testified that the item on his lap in the video was a Gucci bag in which he carried his catheters, his keys, and other such items. He denied that he had a shopping bag with a shoe box inside and denied that he was carrying any methamphetamine.

Ace Vargas also testified that he was a passenger in the Charger, which Nico Hobbs was driving, on August 27, 2013. According to Ace Vargas, Manuel Vargas had left keys in Nico Hobbs' car, so Ace Vargas and Nico Hobbs were to meet Manuel Vargas at 12412 Woodbourne to return the keys. Ace Vargas and Nico Hobbs in the Charger and Manuel Vargas in the BMW approached 12412 Woodbourne at approximately the same time, and the three men saw that law enforcement officers were executing a search warrant. Both vehicles reversed direction, when Manuel Vargas stuck his hand out and directed Ace Vargas and Nico Hobbs to follow him, which they did. Both vehicles then went to 4918 Westwood Avenue. The Charger, with Nico Hobbs and Ace Vargas in it, was parked behind Manuel Vargas's BMW when Manuel Vargas brought items out of his house and placed them in the BMW. Ace Vargas testified that while Manuel Vargas was outside the vision of the camera, he waved to Nico Hobbs, so Nico Hobbs got out of the vehicle, spoke with Manuel Vargas, and then retrieved the bags from the BMW and put them into the trunk of the Charger. Ace Vargas denies that he instructed Nico Hobbs to remove the items from the BMW and place them in the Charger.

The preponderance of the evidence supports the government's claim that Ace Vargas participated with Manuel Vargas in a conspiracy to distribute methamphetamine and that Ace Vargas knowingly and intentionally participated in the attempt to conceal evidence from law

enforcement authorities. First, the recording of August 26, 2013, supports Stephen Harris's testimony. As noted above, Harris was inside the house at 12412 Woodbourne for approximately twenty-three minutes. The time that elapsed between Ace Vargas entering the house and Stephen Harris exiting it, however, was slightly more than one minute. That timing is consistent with Stephen Harris's testimony that he had to wait until the methamphetamine arrived, and it supports the conclusion that Ace Vargas was carrying the methamphetamine when he entered the house. Although no testimony implicates Ace Vargas as a supplier of methamphetamine to Manuel Vargas, Paula Spence testified that Manuel Vargas had a storage facility where he kept methamphetamine. If Ace Vargas was assisting Manuel Vargas in the distribution of methamphetamine, it is likely that he retrieved the methamphetamine from the storage facility to deliver to 12412 Woodbourne for Manuel Vargas to sell to Stephen Harris. Even if Ace Vargas did not deliver the methamphetamine to Manuel Vargas on August 26, 2013, the fact that Manuel Vargas consummated a sale of a pound of methamphetamine[1] while Ace Vargas was present supports the conclusion that Ace Vargas was a participant in the methamphetamine conspiracy. Otherwise, it is highly unlikely that Manuel Vargas would have allowed Ace Vargas to be present while he consummated that transaction.

A similar conclusion follows from the events of August 27, 2013. As noted, Manuel Vargas in one vehicle, and Nico Hobbs and Ace Vargas in another arrived in the vicinity of 12412 Woodbourne while officers were executing the search warrant. Both vehicles reversed direction, and Manuel Vargas directed Nico Hobbs and Ace Vargas to follow him, which they did. They followed him to 4918 Westwood, where Manuel Vargas retrieved evidence, with Nico Hobbs and

---

[1] Stephen Harris testified that the pound of methamphetamine cost $15,000. He paid $12,000 on August 26, 2013, and owed the balance of $3,000 to Manuel Vargas. Paula Spence testified that Stephen Harris regularly purchased a pound of methamphetamine from Manuel Vargas for $15,000.

Ace Vargas watching, and placed it in his BMW. Seconds after Manuel Vargas left the vision of the camera, apparently to re-enter the house, Nico Hobbs retrieved the evidence from the BMW and placed it in the trunk of the Charger. Shortly thereafter, Manuel Vargas emerged from the house with more evidence and placed it in the trunk of the Charger, after which both vehicles left simultaneously. Unless Nico Hobbs and Ace Vargas were participants with Manuel Vargas in his methamphetamine distribution business, it is highly unlikely that Manuel Vargas would have directed the two of them to follow him to his other residence and allowed them to watch while he retrieved evidence from the house in an effort to hide it from law enforcement authorities. It is even more unlikely that Manuel Vargas would have entrusted the evidence, which included $90,000 and a large collection of jewelry, to Nico Hobbs and Ace Vargas if they were not involved in the conspiracy with him. Ace Vargas testified that while Manuel Vargas was off camera, he motioned Nico Hobbs to exit the car, and then the two of them conversed. According to Ace Vargas, Manuel Vargas instructed Nico Hobbs to retrieve the evidence from the BMW and place it in the Charger. The recording does not support that testimony. The recording shows that Nico Hobbs exited the Charger, retrieved the evidence from the BMW, and placed it in the trunk of the Charger, all while Manuel Vargas was off camera – apparently inside the house retrieving more evidence. Nothing in the recording indicates that Manuel Vargas spoke with Nico Hobbs until Manuel Vargas emerged from the house with more evidence and placed it in the trunk of the Charger.

Apart from the recording, the Court would not place much stock in the testimony by Paula Spence that Manuel Vargas said that Ace Vargas directed Nico Hobbs to remove the evidence from the BMW and place it in the Charger because law enforcement authorities were looking for Manuel

9

Vargas and therefore would be more likely to stop and search the BMW. In light of the evidence from the recording, however, that testimony is credible.

Ace Vargas testified that between the time that Stephen Harris visited him in California in approximately 2003 and August 23, 2013, he never saw Stephen Harris. That testimony is not credible. Both of them agreed that they had been friends – close enough friends for Stephen Harris to fly to California and stay with Ace Vargas for one or two weeks while Ace Vargas was recuperating from the gunshot wounds. If Ace Vargas's testimony is true, those two friends went ten years without seeing one another and then, when they met for the first time in ten years, they spent less than two minutes together – which is not credible.

Finally, it seems unlikely that Paula Spence would have fabricated the testimony regarding Ace Vargas mailing methamphetamine and marijuana to Arkansas for Manuel Vargas. Paula Spence testified that one of those packages was seized by the postal service. Although that testimony was not independently verified at the evidentiary hearing, the fact that it could be independently verified by the postal service lends credence to it.

Based on these facts, the Court finds that Ace Vargas willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation of methamphetamine distribution by Manuel Vargas. Therefore, the offense level must be increased by two levels pursuant to § 3C1.1. The Court also finds that the offense involved between three and seven firearms, which results in a two-level increase in the offense level under § 2K2.1(b)(1)(A). Finally, the Court finds that the firearms were possessed in connection with another felony (conspiracy to possess with intent to distribute methamphetamine as charged in Count 1 of the indictment and the superseding indictment) which results in a four-level increase in the offense level

pursuant to § 2K2.1(b)(6). Based on these findings, the final offense level for Ace Vargas's guideline calculation is twenty. With a criminal history category of I and an offense level of twenty, the guideline range for Ace Vargas's sentence is a term of imprisonment of thirty-three to forty-one months and a fine of $15,000 to $150,000. *See* § 5E1.2(c)(3).

An order will be entered separately scheduling the resumption of the sentencing hearing.

IT IS SO ORDERED this 7th day of March, 2016.

*J. Leon Holmes*
_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE